**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) CASE NO: |
| CRG COMPANIES, INC. f/k/a/ PG ENTERPRISES, INC., a South Carolina corporation; and JOSEPHINE GALTELLI, individually and as Trustee of the JOSEPHINE R. GALTELLI REVOCABLE TRUST, dated June 20, 2012 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Plaintiff, ATAIN SPECIALTY INSURANCE COMPANY ("Atain"), files this Complaint for Declaratory Judgment against the Defendants, CRG COMPANIES, INC. f/k/a PG ENTERPRISES, INC. ("CRG"); and JOSEPHINE GALTELLI, individually and as Trustee for the JOSEPHINE R. GALTELLI REVOCABLE TRUST, dated June 20, 2012 (collectively, "Galtelli"), and in support, states:

**NATURE OF ACTION**

1. This is an action for declaratory relief under 28 U.S.C. § 2201 (2022) and FED. R. CIV. P. 57 (2022) to establish the absence of coverage under a Commercial General Liability ("CGL") insurance policy issued to CRG, for a lawsuit arising out of alleged construction defects, brought by Galtelli (the "Galtelli Lawsuit").

**JURISDICTION AND VENUE**

2. Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3. Venue is proper in this district because the events giving rise to the claim occurred here. 28 U.S.C. § 1391(a)(2) (2018). More specifically, this is the district where the underlying action is venued, and where the insured risk lies. At least one of the Defendants is domiciled in this district.

4. All conditions precedent have occurred, have been performed, or have been waived.

## THE PARTIES

5. The Plaintiff, Atain, is a Michigan corporation with its principal place of business in Michigan. Atain is a surplus lines insurance company under S.C. Code § 38-45-10, *et seq*. and issued a CGL Policy to CRG.

6. The Defendant, CRG is a South Carolina corporation with its principal place of business in Myrtle Beach, South Carolina. CRG was named as a defendant in the Galtelli Lawsuit, which was filed in Horry County, South Carolina. CRG is the named insured on the Policies issued by Atain.

7. The Defendant, Galtelli, is a South Carolina citizen who is domiciled in Horry County, South Carolina. Galtelli is the underlying plaintiff in the Galtelli Lawsuit.

## COMMON ALLEGATIONS

8. ***THE GALTELLI LAWSUIT***: Galtelli initially filed a lawsuit in the Horry County Court of Common Pleas, Case No. 2018-CP-04-01787, against CRG, due to alleged defects in the construction of her residence (the "Residence"). Galtelli alleged that as a result of CRG's breaches, the Residence was damaged, including but not limited to the building materials, ceilings and floors. A copy of the initial complaint is attached as Exhibit "A."

9. Galtelli agreed to dismiss her lawsuit against CRG in an attempt to correct the alleged defects claimed by Galtelli. Galtelli subsequently renewed her lawsuit in 2020. A copy of

the current operative pleading in the Galtelli Lawsuit is attached as Exhibit "B" and hereinafter referred to as the "Galtelli Complaint" or the "Galtelli Lawsuit."

10. Galtelli alleges that on or about September 3, 2012, Galtelli hired CRG to perform the duties of general contractor for the Residence. (Ex. B, ¶ 15).

11. Galtelli also alleges that as a general contractor, CRG owed a duty of care to Galtelli to ensure that those subcontractors or specialty contractors it hired, performed all construction work on the Residence in a manner that conformed with applicable building codes, accepted construction and industry standards, and manufacturers' recommendations. (Ex. B, ¶ 17).

12. Galtelli also alleges that CRG's expert determined that CRG allowed the Residence to be constructed in a defective manner, so as to allow excessive air infiltration and humidity into the Residence. (Ex. B, ¶ 19).

13. Galtelli further alleges that as a direct and proximate cause of CRG breaching the duties of care owed to Galtelli, the Residence has been constructed in a defective manner, with such defects, including but not limited to allowing excessive air infiltration and humidity into the Residence. Galtelli alleges that the intrusion of excessive air infiltration and humidity into the Residence is continuing and has caused deterioration to the Residence, damage to the Residence, damage to the building materials inside the Residence (such as, but not limited to, the floors and ceiling of the Residence), other damages to the finish and structural elements of the Residence, mold and other dangerous conditions to exist and be pervasive in the Residence. (Ex. B, ¶ 24).

14. Galtelli also alleges that each year since completion of work on the Residence, new areas of damage have occurred, separate and apart from any damage already in progress, all of which have resulted in Galtelli continuing to suffer damages. (Ex. B, ¶ 24).

15. Galtelli asserted claims for Negligence (Count I) and Breach of Warranty (Count II) against CRG.

16. CRG in turn has filed a third-party complaint against its subcontractors. A copy of the current operative third-party complaint is attached as Exhibit "C."

17. **THE POLICIES:** Atain issued five Commercial General Liability Policies to CRG as the sole named insured: Policy No. PRB13342, effective July 15, 2017 through July 15, 2018 (the "2017-18 Policy"); Policy No. PRB13374, effective July 15, 2018 through July 15, 2019 (the "2018-19 Policy"); Policy No. PRB13434, effective July 15, 2019 through July 15, 2020 (the "2019-20 Policy"); Policy No. PRB13505, effective July 15, 2020 through July 15, 2021 (the "2020-21 Policy"); and Policy No. PRB13599, effective July 15, 2021 through July 15, 2022 (the "2021-22 Policy") (collectively, the "Policies"). The Policies are attached as Exhibits D-H to the complaint.

18. The Policies provide CGL coverage, with limits of $1,000,000 per occurrence and $2,000,000 general aggregate limit, subject to a $1,000 per claim deductible for property damage. (Ex. D-H, Declarations & Supplemental Declarations).

19. The principal insuring agreement in the Policy provides, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

  (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  (2)  The "bodily injury" or "property damage" occurs during the policy period . . .

**2.**  **Exclusions**

This insurance does not apply to …

  **j.**  **Damage to Property**

    "Property damage" to:

    **(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations, or

    **(6)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
    …

  **k.**  **Damage to Your Product**

    "Property damage" to "your product" arising out of it or any part of it.

  **l.**  **Damage to Your Work**

    "Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

  **m.**  **Damage to Impaired Property Or Property Not Physically Injured**

    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

    **n.**    **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product',
(2)    "Your work"; or
(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. …

**SECTION V-DEFINITIONS** …

**8.**    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement. …

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rend and arising out of "your product" or "your work"...

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**21.**    "Your product" means:

    **a.**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)    You;
(2)    Others trading under your name; or

        (3)    A person or organization whose business or assets you have acquired . . .

**22.**    "Your work" means:

    **a.**    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2)    The providing of or failure to provide warnings or instructions.

(Ex. D-H, Form No. CG 00 01 04 13).

20.    The Policies include Form No. AF33535 (02/17), titled "First Manifestation Amendment Of Insuring Agreement" ("First Manifestation Endorsement"), which provides, in pertinent part:

It is hereby understood and agreed as follows:

A.    Item 1. - Insuring Agreement paragraph 1.b. of Section I, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY is amended to read as follows:

This insurance applies to "bodily injury" or "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" first manifests during the policy period; and

    (3)    No part of the "bodily injury", "property damage" to any person or organization presenting a "claim" or filing "suit" manifested itself or became apparent to any insured prior to the effective date of this policy. …

C.    It is hereby agreed that paragraph 13. "occurrence" of SECTION V - DEFINITIONS is deleted in its entirety and replaced with the following:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage", "bodily injury", or "personal and advertising injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to and not during the term of this insurance.

This insurance does not apply, and we shall have no duty to defend or indemnify any insured for any claim, "occurrence" or "suit" seeking damages arising out of "bodily injury", "property damage", or "personal advertising injury" that commenced prior to the inception date of this policy or after the expiration of this policy. …

(Ex. D-H, Form No. AF33535 (02/17)).

21.     The Policies also include Form No. AF001746 (04/2016), titled, "Subcontractors Warranty Endorsement," which provides, in pertinent part:

The INDEPENDENT CONTRACTORS LIABILITY ENDORSEMENT, in the Combined Coverage and Exclusion Endorsement AF 001 007, is deleted in its entirety and replaced with the language of this endorsement.

It is hereby agreed and understood that this policy is amended to include the following as a condition precedent for any insured seeking coverage under this policy:

For any "subcontractor" working on behalf any insured, it is hereby agreed and understood that such "subcontractor" shall obtain occurrence form general liability coverage covering the work performed by such "subcontractor" with an insurance carrier rated "A" or better by A.M. Best and with limits of liability of at least $1,000,000 per occurrence and in the aggregate.

Such insurance must be obtained and in-force prior to the start of work performed by such "subcontractor." Such insurance must also include the Named Insured, as well as any other insured seeking coverage under this policy, as an Additional Insured.

It shall be the duty of any insured seeking coverage under this policy to obtain all necessary documentation that ensures that conditions of this endorsement are satisfied. We shall have no obligation for defense or indemnity for any insured seeking coverage under this policy if all of the conditions of this Endorsement are not satisfied.

For purposes of this endorsement, "subcontractor" means one that contracts to do work or perform a service for another and includes anyone working for or retained

by a subcontractor, independent contractor, or anyone working for or retained by an independent contractor.

When there is no coverage for any one insured under this endorsement, coverage is also excluded for any other insured and Section IV.7.b. of form CG 00 01 shall not apply. …

(Ex. D-H; Form No. AF001746 (04/2016)).

22.     The Policy also includes Form No. CG 21 67 12 04, titled "Fungi Or Bacteria Exclusion," which provides, in relevant part:

> **A.**     The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**:
>
>> 2.     Exclusions
>>
>> This insurance does not apply to:
>>
>> **Fungi Or Bacteria**
>>
>>> **a.**     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>>>
>>> **b.**     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>>>
>>> This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.
>
> **C.**     The following definition is added to the Definitions Section:
>
>> "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

(Ex. D-H; Form No. CG 21 67 12 04).

23. The Policies also include Form No. AF-3380 (06/ 17), titled, "Fraud, Concealment And Misrepresentation Endorsement," which provides, in relevant part:

> **A. FRAUD, CONCEALMENT AND MISREPRESENTATION FOR INCEPTION OF THIS POLICY**
>
> This policy was issued based on the information supplied on an application and other correspondence, including your claims or loss history. This information is attached to and considered to be part of this policy.
>
> You should review this information carefully because the truth of this information was of paramount importance in influencing our decision to issue this policy.
>
> You, for all the insureds under this policy, do warrant the truth of such information to the best of your and their knowledge at the inception date of this policy.
>
> If such information is false or misleading, it may cause denial of coverage or voiding of the policy. In any such instance, there shall be no duty to defend or indemnify any insured.
>
> **B. FRAUD, CONCEALMENT AND MISREPRESENTATION IN PRESENTING ANY CLAIM**
>
> With respect to all "insureds" covered under this policy and their representatives, we do not provide coverage if one or more "insureds" have:
>
> a)  Concealed or misrepresented any material fact or circumstance; or
> b)  Engaged in fraudulent or dishonest conduct relating to a claim.
>
> Any actions taken by an insured, or their representative, as outlined in this endorsement may cause a denial of coverage or voiding of the policy. In any such instance, there shall be no duty to defend or indemnify any insured.

(Ex. D-H, Form No. AF-3380 (06/ 17)).

24. ***CRG'S INSURANCE APPLICATIONS:*** In order to secure CGL coverage with Atain, CRG executed an insurance application prior to the issuance of each policy. Copies of CRG's insurance applications for the 2017-18 Policy, the 2018-19 Policy, the 2019-20 Policy, and the 2020-21 Policy are attached as Exhibits I – L.

25. In the "Loss History" section of the 2017 insurance application, CRG stated it had no claims, losses, or occurrences that could give rise to a claim within the previous five years. The application was signed by Brian Wates of CRG and dated July 12, 2-17. (Ex. I, Pg. 4).

26. In the "Loss History" section of the 2018 insurance application, CRG again stated it had no claims, losses, or occurrences that could give rise to a claim within the previous five years. The application was signed by Bryan Wates of CRG and dated July 13, 2018. (Ex. J, Pg. 4).

27. In the "Loss History" section of the 2019 insurance application, CRG again stated it had no claims, losses or occurrences that could give rise to a claim within the previous five years. The application was signed by Bryan Wates of CRG and dated July 12, 2019. (Ex. K, Pg. 4).

28. In the "Loss History" section of the 2020 insurance application, CRG again stated it had no claims, losses, or occurrences that could give rise to a claim. The application was signed by Joseph Schlagel of CRG and was dated July 15, 2020. (Ex. L, Pg. 4).

29. Atain was first notified of the Galtelli Lawsuit on or about May 13, 2021.

30. CRG's representations that it was unaware of any claims, losses or occurrences that could give rise to a claim are false. CRG was served with the summons and complaint in Galtelli's initial lawsuit on June 14, 2017 and was therefore aware of Galtelli's claim before any insurance application was signed by CRG. A copy of the return of service is attached as Exhibit M.

31. The misrepresentation by CRG was material, in that had CRG accurately identified the Galtelli Lawsuit prior to seeking any insurance, Atain would have either, (1) not issued the Policies, (2) issued the Policies under different terms, or (3) would have charged a different premium.

32. Atain agreed to defend CRG for the Galtelli Lawsuit under a reservation of rights, including but not limited to a reservation of rights to seek a declaratory judgment. Atain seeks a declaration that it has no obligation to defend or indemnify CRG for the Galtelli Lawsuit.

## COUNT I – NO COVERAGE
## FIRST MANIFESTATION ENDORSEMENT

33. Atain incorporates paragraphs 1-32 as its allegations in this paragraph 33 of Count I.

34. The construction of the Residence was completed on or about June 19, 2014.

35. Galtelli contends she discovered defects in the construction and resulting damages shortly after completion of the work in June 2014.

36. After discovering the alleged damages to her home, Galtelli filed a lawsuit against CRG on June 9, 2017. Galtelli's June 2017 lawsuit specifically alleges that her home suffered damages.

37. The first Atain policy went into effect on July 15, 2017.

38. Under the Policies' "First Manifestation Endorsement," there is no coverage for "property damage" that first manifested or discovered outside of the policy period, even if such damage continues during the policy period.

39. Since Galtelli's alleged "property damage" was manifested or discovered prior to any of the Policies, there is no coverage under the Policies. Consequently, Atain has no obligation to defend or indemnify CRG for the Galtelli Lawsuit.

## COUNT II – NO COVERAGE
## SUBCONTRACTOR WARRANTY ENDORSEMENT

40. Atain incorporates its allegations in paragraphs 1-40 as paragraph 40 of Count II.

41. Galtelli engaged the services of several subcontractors as identified in Exhibit C.

42. Galtelli did not enter into any written subcontract agreements with any of the subcontractors identified in Exhibit C.

43. Galtelli did not enter into any contract or agreement that obligated the subcontractors identified in Exhibit C to name CRG as an additional insured on the subcontractors' insurance policies.

44. CRG did not obtain any certificates of insurance from any of its subcontractors, including but not limited to the subcontractors identified in Exhibit C.

45. Under the Subcontractors Warranty Endorsement, there is no coverage, and no duty to defend or indemnify CRG if it fails to comply with all the conditions of the Subcontractors Warranty Endorsement.

46. CRG failed to comply with the conditions of the Subcontractor Warranty Endorsement by failing to be named as an additional insured on its subcontractors' insurance policies, and by failing to obtain all necessary documentation that ensures that conditions of the Subcontractor Warranty Endorsement are satisfied.

47. Consequently, Atain has no obligation to defend or indemnify CRG to the extent for failing to comply with the Policies Subcontractor Warranty Endorsement.

### COUNT III – NO COVERAGE
### FRAUD/MISREPRESENTATION ENDORSEMENT

48. Atain incorporates its allegations in paragraphs 1-47 as paragraph 48 of Count III.

49. In CRG's insurance applications, CRG repeatedly represented to Atain that it was unaware of any claims, losses, or occurrences that could give rise to a claim within the previous five years.

50. CRG's representations were false, since CRG was served with notice of the Galtelli Lawsuit prior to any insurance application being signed.

51. Under the Policy's Fraud/Misrepresentation Endorsement, there is no duty to defend or indemnify CRG, and coverage is void, if there is any false or misleading statement in the insurance application.

52. CRG's misrepresentations regarding any prior claims were material to Atain's decision to issue the Policies to CRG.

53. Accordingly, coverage should be void, and Atain should have no duty to defend or indemnify CRG under the Policy's Fraud/Misrepresentation Endorsement.

## COUNT IV - RESCISSION

54. Atain incorporates its allegations in paragraphs 1-53 as paragraph 54 of Count IV.

55. In CRG's insurance applications, CRG repeatedly represented to Atain that it was unaware of any claims, losses, or occurrences that could give rise to a claim within the previous five years.

56. CRG's representations regarding its knowledge of prior claims, losses or occurrences that could give rise to a claim were false, because CRG was on notice of the Galtelli Lawsuit prior to signing any insurance application.

57. CRG's misrepresentations in its insurance application were material, in that had Atain been properly informed of CRG's loss history, it would not have issued the policies, it would have issued the policies under different terms, or would have charged a higher premium for the policies.

58. On information and belief, CRG's failure to disclose the Galtelli Lawsuit in its insurance applications was done with the intent to deceive Atain and conceal the Galtelli Lawsuit in order to secure insurance coverage.

59. Based upon CRG's material misrepresentations in the insurance applications, Atain is entitled to rescind the Policies issued to CRG. Should the Court rescind the Policies, Atain will return the earned premiums as coverage would be void *ab initio*.

## COUNT V – NO COVERAGE
## BUSINESS RISK EXCLUSIONS

60. Atain incorporates its allegations in paragraphs 1-59 as paragraph 60 of Count V.

61. There is no coverage to the extent the Galtelli Lawsuit seeks damages for "property damage" to any real property on which CRG or its subcontractors performed any work or operations under Coverage Part A.2.(j)(5).

62. There is also no coverage to the extent the Galtelli Lawsuit seeks damages for "property damage" to any property that must be restored, repaired or replaced because CRG's work was incorrectly performed on it under Coverage Part A.2.(j)(6).

63. There is no coverage to the extent that the Galtelli Lawsuit seeks damages to CRG's product under Coverage Part A.2.(k) ("Your Product Exclusion").

64. There is no coverage to the extent the Galtelli Lawsuit seeks damages to CRG's work, arising out of it and included in the products-completed operations hazard under Coverage Part A.2.l. ("Your Work Exclusion").

65. There is no coverage to the extent that the Galtelli Lawsuit seeks damages for impaired property under Coverage Part A.2.m. ("Impaired Property Exclusion").

66. There is no coverage to the extent the Galtelli Lawsuit seeks damages for any loss, cost or expense incurred by CRG for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of CRG's product, CRG's work, or any "impaired property" if such product, work, or property is withdrawn or recalled because of a known or

suspected defect, deficiency, inadequacy or dangerous condition in it under Coverage Part A.2.n. ("Recall Exclusion").

### COUNT VI – NO COVERAGE
### NO PROPERTY DAMAGE

67. Atain incorporates its allegations in paragraphs 1-66 as paragraph 67 of Count VI.

68. There is no coverage under the Policies to the extent the Galtelli Lawsuit seeks to recover the costs to repair or replace CRG's own work, including the removal of other property to facilitate the repair or replacement of CRG's work.

69. The cost to repair or replace CRG's work does not constitute "property damage" under the Policy. Additionally, the costs to remove and replace other parts of the Galtelli Project to effectuate the repair or replacement of CRG's work does not constitute "property damage."

70. Alternatively, to the extent the Galtelli Lawsuit alleges any "property damage" as defined by the Policies and South Carolina law, Atain is only obligated to pay for its *pro rata* share of such damages based on its time on the risk.

71. Accordingly, there is no coverage under the Policies, and consequently no duty to defend or indemnify CRG. Alternatively, to the extent there is any covered "property damage," Atain's indemnity obligations are limited by its *pro rata* time on the risk.

### COUNT VII – NO COVERAGE
### FUNGI OR BACTERIA EXCLUSION

72. Atain incorporates its allegations in paragraphs 1-71 as paragraph 72 of Count VII.

73. Galtelli specifically alleges the growth and development of mold within the Residence.

74. Under the Policies' Fungi or Bacteria Exclusion, there is no coverage for any property damage arising out of the growth and development of mold, including any costs or

expenses associated with the remediation of, monitoring for, testing for or abating any mold growth or mold development.

75. Accordingly, Atain has no duty to indemnify any for damages related to Galtelli's claim for mold damages.

<b><u>COUNT VIII – NO COVERAGE<br>PUNITIVE DAMAGES EXCLUSION</u></b>

76. Atain incorporates its allegations in paragraphs 1-75 as paragraph 76 of Count VIII.

77. The Galtelli Lawsuit seeks punitive damages due to the alleged conduct of the defendants, including CRG.

78. The 2020-21 Policy and the 2021-22 Policy include a Punitive Damages Exclusion.

79. There is no coverage for the claims for punitive damages in the Galtelli Lawsuit under the 2020-21 Policy and the 2021-22 Policy.

80. There is also no coverage for the claims of punitive damages to the extent they are not recoverable as a matter of law.

<b><u>COUNT IX – NO COVERAGE<br>INTEGRATED POLICY PROVISIONS</u></b>

81. Atain incorporates its allegations in paragraphs 1-80 as paragraph 81 of Count IX.

82. Atain fully incorporates by reference each and every term, condition, exclusion and endorsement contained within the Policies identified as Exhibits D-H.

83. To the extent any additional term, condition, exclusion or endorsement within the Policies applies to the allegations, facts, or circumstances as discovered in this action or the Galtelli Lawsuit, Atain seeks a declaration to the extent such terms, conditions, exclusions or endorsements eliminate or reduce the available coverage for the Galtelli Lawsuit.

## REQUESTED RELIEF

**WHEREFORE**, Atain respectfully requests this Court:

a. Take jurisdiction and adjudicate the rights of the parties under the Policy;

b. Find that Atain has no obligation to defend or indemnify CRG for the Galtelli Lawsuit;

c. Alternatively, that the Policies be rescinded and coverage deemed void *ab initio* due to the material misrepresentations in the applications for insurance made by CRG; and

d. Award Atain all costs it incurs to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

THE LAW OFFICES OF L.W. COOPER JR., LLC

/s/ *M. Linsay Boyce*
Lindsey W. Cooper Jr. (Fed. ID No. 9909)
M. Linsay Boyce (Fed. ID. No. 13511)
Dustin J. Pitts (Fed. ID. No. 11952)
36 Broad Street
Charleston, SC  29401
Telephone: 843.375.6622
Facsimile: 843.375.6623
Email: lwc@lwcooper.com
           linsay@lwcooper.com
           djp@lwcooper.com

*Attorneys for Atain Spec. Ins. Co.*

Dated:  February 10, 2023
Charleston, South Carolina